Good morning, your honors. May it please the court. My name is Keith Hilzendegger. I'm with the Federal Defender's Office in Phoenix and I represent the defendant in this case, Wilson Tsosie. I'm gonna watch the clock and try to save about three minutes for rebuttal. Were you the trial lawyer? I was not the trial lawyer, your honor. In this appeal, the parties agree that the trial judge should not have admitted Mr. Tsosie's certificate of Indian blood because the This error was not harmless because the certificate furnished the only evidence that Mr. Tsosie had ancestry from an indigenous people. You know, the only evidence, that's not quite true. His wife says he's an Indian, right? His wife does not testify about his descendant status. His wife testifies that she has a copy of his certificate, but she doesn't say what quantum of blood is listed on the certificate. She doesn't testify if he's a descendant, and she doesn't testify what quantum of blood is required to be enrolled as a Navajo. It's undisputed that he speaks Navajo. That's correct. How many people with non-Indian blood speak Navajo? I mean, I have two answers to that question. One, I don't know, and two, it's not in the record. Yeah, well, what bothers me about this case is that it's obvious to everybody that he is a Navajo, that he has a quantum of Indian blood. The problem is the technical steps to prove it may or may not have been taken. So that's a distinction I think that's important from my argument. I know it's a critical argument. Right, this isn't a sufficiency issue. I don't think I could win a sufficiency issue because, as this court said in Alvarez, even this improperly admitted evidence contributes to the sufficiency, and the certificate by itself lays sufficient evidence for the jury to make this rational conclusion. But because the government didn't lay the proper foundation for introducing this evidence to the jury, the question becomes what effect on the jury's deliberation did introducing this evidence have? Is this the only way that that could be proven with an authenticated certificate of Indian blood? I mean, is it the Senate pronoun of the government's case? I think it's fair to say, Your Honor, that this court, even though it hasn't had to explicitly say this, I think this court treats the introduction of a certificate as enough to meet both You correct me if I got a misimpression. The certificate existed, but it wasn't properly authenticated, so it didn't come into evidence in the right way. That's correct, Your Honor. Okay, so what was the failure about the certificate? Because the certificate isn't a self-authenticating document, Your Honor, there needed to be an official of the tribe that generated the certificate to testify that it was an authentic document from them. And here, instead of having that official testify, the government tried to lay that foundation through the testimony of an FBI agent. So, you know, he did say that it was an original, but he's not the sort of tribal officer who can say that it's an original and these are the steps that we take to ensure that these are authentic documents. Is that the answer to your question? Yes, but there's a variation on Judge Barker's question. What other mechanisms might be available to prove quantum of blood? Equivalent testimony could have come from, say, Mr. Sosey's brother who testified against him, and he could have been asked, are your parents descendants? Are your parents Indians? Are your grandparents Indians? Are you an Indian in this way? But he didn't give any of that kind of testimony either. I mean, testimony about whether the defendant has a parent or a grandparent or great-grandparent who's a descendant of an aboriginal people, that's what the blood quantum prong of the test is supposed to prove. And, you know, the government didn't ask the right questions to get this evidence in front of the jury. So she, the wife of 20 years, testifies that he's a member. She says, he's a member and I have a copy of his certificate of Indian blood. And I should add to that. It says, let's see, what is your understanding of the significance of the certificate? The tribe uses that to prove you're a member of the tribe by a certain quantum. And the question by quantum, is that a reference to blood? Answer, yes. Right. But she doesn't say what quantum of blood qualifies you to be a member of the Navajo tribe. There was no dispute that he was an Indian, right? There was no, the, his attorney didn't put on any evidence that he was not or dispute whether or not he was an Indian. We did not, we did not try to disprove that he was an Indian, but we did hold the government to its burden to prove that he is an Indian. No, no, you just sandbagged. I mean, you just sat there letting the government put down the insufficient proof and then afterwards said, gotcha. Well, I wouldn't. We did, at the close of the government's case, ask the government, ask for a judgment of on that ground, on that ground, on that ground. Right. But you didn't, as you went along saying, you know, this isn't enough. And I don't even blame you. It's just trial strategy. Okay. I agree. I agree that it's a trial strategy. I was a little taken aback by the characterization as sandbagging, but I see what you're saying. Sandbagging is a trial strategy and that's what happened. Okay. When you have a bank robbery, I'm trying to think of something analogous. You have a bank robbery. You have to get, the government has to get evidence in that it's a federally insured institution to be within the federal jurisdiction. And they usually do that with documents. Right. And I've never seen or read about a case where they didn't, where they did that some other way. And what I'm trying to see is, is this certificate of Indian blood that has to be authenticated comparable to the federally insured status documents so that there's no other way that element can be proven or you can't look to other evidence within the case to make that decision. So, for example, just I'll continue my, my analogy. So, couldn't the prosecutor, if they didn't have the documents, for some reason, let's say Federal Express failed them on the morning of trial. Okay. Couldn't they ask the president of the bank, are you a federally insured institution? And have him say yes. And have that suffice. In the same way that there is evidence in this record that Mr. Sosi was Indian at the time of these offenses. And that can be proven sufficient for the government to say it satisfied its burden if the evidence. May I, may I give sort of a two-part? Oh, you can answer any way you want. Well, because I want to try and address everything that you said, Your Honor. The, the first thing I want to say is that in, in broad strokes, I, I agree with you that there's, there's a lot of similarities between introducing, trying to prove federal jurisdiction by way of showing that someone's an Indian in, in those kinds of cases. And trying to prove that there's federal jurisdiction because the person robbed a federally insured bank. And I agree with you also that the most common way to make both of those showings is with some kind of documentation. And I think, I think we both agree that when those showings are trying to be made by documentation, the proper foundation for whatever that documentation is has to be laid. But when, when in, in those cases when the there's federal jurisdiction by making some showing other than trying to use some documentation, you know, the testimony of other people that would address the proper substance, substance of the federal showing. I think that's where the analogy breaks down because the, the president of the hypothetical bank could say, yes, you know, we've been federally insured since 1962. And every year that I have been president, you know, he could say, I've had to go to the Department of the Treasury, the Comptroller of the Currency, or whatever federal agency, and renew this. And this is what I've done. Here, the, the substantive showing has two components. And I think that there is some evidence in the record to show that the political affiliation component is satisfied. Mrs., Mrs. Soce, his wife Sharon, testified that they participated in he was using a Navajo interpreter during court. There are, there are components, there is evidence in the record to show the, the political affiliation component. But as to the blood quantum, are you a descendant of an aboriginal people? Do you have a parent, grandparent, or great grandparent who was an Indian? There was no other evidence in this record shown to this jury, except for the certificate. Well, the, the wife testifies. That, that is evidence. And you say no, no other shown. I guess that might be right, but no other evidence presented. That's not quite right. Well, but Your Honor, there was testimony that, that you can live on the reservation by being married to an, a Navajo person, even if you're not a Navajo. That he was a member. So he was a member of the tribe. So she, she definitely testified that he was a member. And so she didn't then say, and to be a member of the Navajo tribe, you need a specific quantum. But she did reference, she did respond to a question as to whether, does that mean he has a specific quantum of blood? And she said, yes. So, I'm sorry, did you have more? Okay. So, so I mean, there's, there definitely was some testimony to that effect, that he was a member of the tribe, which is what the certificate of Indian blood would have said as well, enrollment. And that, that meant he had a certain quantum of blood. So, Your Honor, the harmless, the metric of harmlessness here is, did the error in admitting the certificate have, more probably than not, have some effect on the verdict? And my position is that there's a, there's a tiny little pile of evidence without the certificate, and there's a massive pile with it. And that shows that the, admitting the certificate had a demonstrable effect on the verdict. The jury wouldn't have had to ask questions like, well, how do you become a member? What does it mean to live on the reservation? Who's allowed? The jury wouldn't have had to speculate from these wisps of evidence in the record if it had, if the certificate had been properly admitted. So wait, the certificate existed and came into evidence, but your position was it wasn't properly authenticated. Is that right? It came into evidence, but that was erroneous. That's correct. Yeah. Okay. So, okay, let me just ask the follow up. So, such as it was, that is to say, not properly authenticated, it came into evidence because it was relevant. Some foundation had been laid for it. It just didn't get all the way over the goal line in terms of evidentiary rules. Can that gap be filled with other evidence, such as the wife's testimony and so forth? For purposes of a sufficiency of the evidence analysis, yes, Your Honor. But that's not an issue that's in this case. The issue about the certificate goes to whether the error in admitting the certificate had some effect on the verdict. And I know the distinction is subtle and a lot of the questions overlap, but I'm not contending that the evidence is sufficient such that a ruling in my favor would prevent retrial. I'm saying that if you agree that there was some harm in admitting the certificate, the proper result would be to vacate the convictions and remand for another trial, to give the governor another chance to lay the proper foundation. And I see that the yellow light is on, so I'd like to... Let's hear from the government and then we'll hear again from you. Thank you. Thank you. May it please the court. My name is Carla Hodes-Delore and I'm representing the United States in this matter. Any error in the admission of the defendant's certificate of Indian blood was harmless in this case because there was other evidence to prove the defendant's blood quantum. And specifically, as the court has recognized, it was the defendant's wife's blood. She stated... Yeah, precisely what did she say? She stated that she had been married to the defendant for 20 years. They were enrolled members of the Navajo Nation. The agent... I'm sorry, they asked, how do you know he's an enrolled member? She said, he has a census number and I have a copy of his certificate of Indian blood with the Navajo Nation. And the tribe uses it to prove you're a member of the tribe by a certain quantum. And then the follow up, do you mean blood? Yes, a certain quantum of the blood. And that testimony by itself is sufficient to prove the defendant's blood quantum. How do you respond to the argument that while what you just said may be true, the actual certificate that was admitted, but improperly so, may have influenced the jury to come to the conclusion and the jury should not have seen that and should not have been able to prove it. The only evidence is the wife's testimony. We're dealing with a case in which we have the wife's testimony, plus other evidence that looks to be absolutely probative, but shouldn't have been there. Correct. But under the harmlessness standard, if you take out the certificate and the agent's testimony regarding the certificate, you have to look at whether there was evidence of the defendant's Indian blood and there was evidence of the blood by her testimony and the fact that not only does he have a certificate of Indian blood and he's an enrolled member, he's participated in Navajo ceremonies and ceremonies that are for himself, that the ceremonies were for himself that he participated in. So a jury... It sounded like actually kind of a snarky comment by the wife. Yeah, he participates, but only when they're to his advantage. But the jury with that testimony alone could determine that the first prong of the Bruce test has been met. This court has never set a minimum as to what is required. All that's required is some quantum. And the defendant's wife's testimony establishes that there is some quantum. Was there any evidence introduced undercutting that? So in other words, in the absence of the certificate, there was some testimony that he was a member as to a quantum of blood. Was there any evidence introduced that would undercut that he was an Indian or had that quantum? No, it was completely undisputed and uncontradicted. And the wife testified first before the agent testified. So the wife's testimony came in before any mention of the certificate through the agent and being trying to be admitted. So there was... No one disputed that he was an Indian at trial and her testimony was completely uncontradicted as well. When the evidence objects, is it not properly authenticated? Correct. The government agrees that it was not properly authenticated. So the government's on notice when it comes in that there may be a problem with this document as evidence? At the time of this trial, it was from 2012 before this case law evolved, saying... Because the practice was that FBI agents in the past were able... Did in the past... The certificates were introduced through the agents and admitted, but then the case law developed to where they realized that you cannot do it that way. You need to have the custodian record. So this case was actually pre Zepeda and it was held pending Zepeda. I don't think Zepeda established that rule. No, but I'm just saying... But learning the practice of it before, so... What was the case that changed the rule about authentication? I'm unaware of that case. I don't have a specific case, but I'm just saying the practice at the time and how it's evolved, so... Okay. So let me just ask you to elaborate on that point. So what was the flaw? What kept it from being properly authenticated? It could not be authenticated through the FBI agent's testimony because it was not... So it was the sponsor's testimony that couldn't go far enough to authenticate? Correct. To actually bring in the fact that he had the 4-4 quantum of Indian blood through the certificate. So that could have come in a different way through the wife or some other testimony, but it did not come in through the certificate. And the wife, as we admit, did not authenticate the certificate in this place. But her testimony did though establish that there is some quantum of Indian blood. And in addition to that testimony, this court could take judicial notice of the fact of the Navajo Tribal Code that states that in order to be a member of the Navajo Nation, you have to have no less than a quarter of Navajo blood in order to be an enrolled member. So how should this... Were you to go back and do this case over again and avoid the authentication problem? How would you do it? Would you bring in the custodian from the tribe? Correct. Is that how you'd do it? Correct. Was there any attempt to do that or the government just thought that the FBI agent was enough? Correct. I was not trial counsel below, so I don't know the reason for not bringing in the custodian of records, but they did try to establish it through the FBI agent stating that he obtained the certificate from the tribal enrollment office. It had the raised seal and was authenticated. So that's how they tried to bring it in the first time. But if this were to be sent back, then it would be just to fix that technicality and bring a custodian of records in. But the government's position is it doesn't need to be sent back because the wife's testimony did establish that there was quantum, that the defendant had some quantum of Indian blood, which is why the admission of this certificate was harmless error. If the court has no further questions, I do wanna point out though, for the sake of the supervised release, I did wanna mention based on the reply brief from the defendant that the government does admit that the supervised release guidelines were incorrectly calculated. However, the government contends that that did not result in plain error because there's no indication the court would have given a different sentence of supervised release had it correctly calculated the guidelines. But presumably, if the case is remanded, that'll be looked at too, if the defendant's convicted. Correct. Or let me ask it slightly differently. If we were to affirm on all grounds except that... Correct. Should we be remanding for resentencing in any event with respect to supervised release? It's the government's position that the incorrect calculation of the guidelines did not affect, that it did not result in plain error sufficient that it should be remanded because there's no indication that the court would have sentenced the defendant to anything other than life had the guidelines been correctly calculated. But if this court were to disagree, it could affirm the conviction and then just remand solely on the supervised release conditions. And let the judge have another look. Correct. If there's no further questions, then we ask that you affirm the conviction and sentence. Thank you. I'd like to, if I may, address briefly the resentencing issue that my friend at the other table just brought up. Now that the government agrees that the supervised release guidelines were improperly calculated, I think this is an indication in the record that the judge might have imposed a different term of supervised release based on what the guidelines, what he thought the guidelines recommended. He imposed a custodial sentence in the middle of the guidelines range, and yet he imposed a supervised release term at the maximum possible deviation. Minimum term is five years, he imposed life. So now that the government has admitted that the guidelines do not recommend a lifetime term of supervised release in this case, if this court should remand for resentencing, at least for resentencing, so that the judge can have a chance to articulate... Didn't the judge... I'm doing this on recall now, so maybe the record will have to be cited to clarify. But didn't the judge say, I'm gonna pull back on a maximum sentence or a more harsh and severe sentence, but I'm going to keep an eye on you through the probation department and supervised release for a long time because of the nature of the offense and whatever other factors were in that presentence report. Wasn't that the overarching rationale of the district judge at sentencing? I'm not recalling the record in the same way that we're both articulating this on recall, Your Honor. My recollection was that there was no explanation given for the length of the supervised release term, but to the extent that the explanation that he gave for choosing a term in the middle of supervised release... In the middle of the custodial range should carry over, I think that the judge could equally use that reasoning to justify, say, a 15 year term of supervised release as opposed to a lifetime term. And this court has said that there needs to be sufficient explanation in the record to justify a deviation from the guidelines range, and the sufficiency of the explanation has to be proportional. I wanna make two related and very short points about the evidentiary issue. The case that, for the first time in this court, clearly articulated that authentication of the certificate has to come from a proper member of the tribe, that's the Alvarez case, and that's 831 F3rd 1115. That was in 2016. Right, and Your Honor was on that panel. It was subsequent to the events that took place here. That's correct. And I just wanna reiterate that the metric of harmlessness does not depend on the sufficiency of the other evidence apart from the improperly admitted evidence. It has to do with the effect that the error had on the jury's deliberation. And so, with that clarification, I would ask the court to vacate the convictions and remand for a new trial. Okay, thank you. Thank both sides for good arguments. United States versus Chelsea, submitted for decision.
judges: W. Fletcher, Ikuta, Barker